******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

MULLINS, J., with whom ROBINSON, C. J., joins, dissenting. I respectfully dissent. This court has explained that "[a]n employer violates [General Statutes § 31-73 (b)] whenever it demands any sum of money from an individual to secure employment or continue employment." (Internal quotation marks omitted.) *Mytych* v. *May Dept. Stores Co.*, 260 Conn. 152, 165–66, 793 A.2d 1068 (2002). Thus, the dispositive issue in this case is whether the attempt of the defendant, Northeast Helicopters Flight Services, LLC, to have its employee, the plaintiff, Tim Dunn, agree to share fees he would receive as a Federal Aviation Administration (FAA) certified pilot examiner—fees that constituted unrealized proceeds from a separate business venture, unrelated to any wages or sums of money paid to the plaintiff by the defendant as part of their ongoing employment relationship—legally constituted an act that violated the statute or our public policy articulated therein. For the reasons cogently outlined by the Appellate Court; see *Dunn* v. *Northeast Helicopters Flight Services, LLC*, 206 Conn. App. 412, 432–35, 261 A.3d 15 (2021); I conclude that § 31-73 (b) is inapplicable to the circumstances of this case because any request or demand for future FAA examination fees concerned unrealized funds from a proposed future business venture between the parties.[1]

In particular, I agree with the Appellate Court that "[t]he plaintiff was free to reject the offer, and the defendant, under the at-will employment doctrine, was free to terminate the plaintiff's employment for his decision. The public policy inherent in § 31-73 (b) places a limit on the at-will employment rule only by carving out an exception that prohibits an employer from coercing from an employee financial concessions related to wages by conditioning . . . continued employment on the employee's capitulation to the employer's demands. As the trial court stated, '§ 31-73 (b) does not regulate an employer's reason for [discharging] an employee; it regulates the use of continued employment as leverage to extort a sum of money.' "[2] Id., 434.

Additionally, § 31-73 (b) not only "prohibits an employer from demanding or requesting a sum of money upon the representation or understanding that acceptance of the demand or request is necessary *for continued employment*"; (emphasis added); as the majority points out, but also prohibits an employer from demanding or requesting a sum of money "upon the representation or the understanding that such refund of wages, fee, sum of money, contribution or deduction is necessary to *secure employment* . . . ." (Emphasis added.) General Statutes § 31-73 (b). Therefore, the prohibitions in the statute apply equally and in the same manner to secur-

ing employment and to continuing employment. See *Lockwood* v. *Professional Wheelchair Transportation, Inc.*, 37 Conn. App. 85, 98, 654 A.2d 1252 ("[t]he public policy embodied in § 31-73 applies to hiring"), cert. denied, 233 Conn. 902, 657 A.2d 641 (1995).

With that understanding in mind, and reading the statute as a whole, I cannot envision how the defendant's actions in the present case violated the public policy embodied in § 31-73 (b). Specifically, if the defendant had proposed the same examination fee sharing agreement to the plaintiff during the hiring process as a compensation scheme, i.e., offering the job as a flight instructor to the plaintiff if he agrees to a 50 percent share of the FAA examination fees, and the plaintiff had rejected the offer and asked to be employed solely as a flight instructor, surely, the defendant would not have violated the statute by declining to hire the plaintiff when the plaintiff rejected the employment offer based on the compensation proposed. I see no real difference under this statute between the request being made during the hiring process, when there is no right to being hired, versus the request being made in the context of at-will employment, when there is no right to continuing in employment. The real issue in either scenario is whether the employer leveraged employment to exact a sum of money. That did not happen under the facts of this case.

Therefore, I cannot conclude that, within the at-will employment relationship, the defendant was prohibited from terminating the plaintiff's employment because the plaintiff rejected the defendant's proposal of future fee sharing. Neither § 31-73 (b) nor the public policy embedded therein prohibits an employer and a prospective employee from negotiating the terms of the employment prior to hiring, and, similarly, § 31-73 (b) does not prohibit an employer and an at-will employee from negotiating the terms of a prospective change to the terms of employment. Such discussions are an essential component of the employment relationship, and the legislature could not have intended § 31-73 (b) to prohibit them.

For the foregoing reasons, I respectfully dissent.

[1] I note that the Appellate Court aptly relied on *Lockwood* v. *Professional Wheelchair Transportation, Inc.*, 37 Conn. App. 85, 87–89, 92–95, 654 A.2d 1252, cert. denied, 233 Conn. 902, 657 A.2d 641 (1995), and *Mytych* v. *May Dept. Stores Co.*, supra, 260 Conn. 165–66, in its analysis. See *Dunn* v. *Northeast Helicopters Flight Services, LLC*, supra, 206 Conn. App. 428–33. In *Lockwood*, the Appellate Court concluded that the defendant employer violated § 31-73 (b) and the public policy expressed therein when it made explicit demands that the plaintiff employee could not return to work unless he paid the defendant $1000 for its insurance deductible, even after the plaintiff had obtained a small claims judgment, in which the small claims court determined that he did not owe the defendant the $1000. See *Lockwood* v. *Professional Wheelchair Transportation, Inc.*, supra, 87–89, 92–95.

On the other hand, in *Mytych*, this court rejected the employees' claim that the employer's calculation of commissions violated § 31-73 (b) because the employer improperly deducted the pro rata share of the retail price of unidentified returns from their gross sales when calculating the commissions. See *Mytych* v. *May Dept. Stores Co.*, supra, 260 Conn. 157–58. The

employees claimed that this method of calculating their commissions violated § 31-73 (b) because it constituted a demand or request for a sum of money. See id., 162–63, 165. This court rejected that claim, concluding that the employees had agreed to the terms for calculating their commissions and that the commission agreement itself was not a demand or request for a sum of money. Id., 166. Instead, this court observed, the employer "merely calculated the commissions earned by individual salespersons, taking into account factors such as identified and unidentified returns that alter the total amount of gross sales for which the individual salesperson can claim responsibility." Id.

I agree with the Appellate Court that these prior cases support the conclusion that the defendant's actions in the present case do not fall within the prohibitions of § 31-73 (b).

[2] Although the Appellate Court seems to limit its conclusion to "financial concessions related to *wages*"; (emphasis added) *Dunn* v. *Northeast Helicopters Flight Services, LLC*, supra, 206 Conn. App. 434; I would not so limit it. Instead, in my view, the demand or request by the employer for financial concessions also falls within the prohibitions in § 31-73 (b) if it is a demand or request for a "fee, sum of money or contribution . . . . " General Statutes § 31-73 (b). Here, the defendant did not leverage the plaintiff's employment in an attempt to exact a sum of money. Rather, the plaintiff and the defendant were merely discussing a potential future business venture.

_____